UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN KRALJEVICH,

                     Plaintiff,                    21-cv-9168 (PKC)

       -against-                   OPINION AND ORDER

COURSER ATHLETICS, INC.,
GREGG SPIRO, MICHAEL PETRY and
LAURIE SPIRO,

                 Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff John Kraljevich moves for the entry of default judgment against defendants Michael Petry and Laurie Spiro (collectively, the "Petrys"). Rule 55(b), Fed. R. Civ. P. (Doc 45.) The Petrys cross-move to vacate the Clerk's Certificate of Default and to dismiss the Complaint for insufficient service of process, improper venue and failure to state a claim. Rules 12(b)(3), (5) & (6), Fed. R. Civ. P. For reasons that will be explained, Kraljevich's motion for default judgment will be denied and the Petrys' motion to vacate the Certificates of Default will be granted. The Court concludes that service of process was proper. Because the Court concludes that the parties' forum selection clause is valid, enforceable and covers the existing dispute, the action will be transferred to the District of Massachusetts. It is not necessary for the Court to reach so much of the motion as seeks to dismiss the Complaint for failure to state a claim.

BACKGROUND

The Complaint alleges that defendants Courser Athletics, Inc., Michael Petry, Gregg Spiro and Laurie Spiro are "willfully infringing Mr. Kraljevich's copyrighted works by manufacturing, importing, distributing and selling high-priced athletic sneakers that copy Mr. Kraljevich's shoe designs without his authorization" and have "fail[ed] to compensate Mr. Kraljevich for services that he provided." (Doc 1 ("Compl't") ¶¶ 1, 2.)

In particular, it alleges that Kraljevich and Michael Petry met in 2005 while working together for a third-party footwear brand and remained friends over the following years. (Compl't ¶ 13.) Around early 2018, Kraljevich approached Petry about co-founding a new luxury athletic footwear brand: "Courser." (Id. ¶ 15.) Michael Petry served as Courser's Chief Executive Officer, Kraljevich served as the Chief Creative Officer, and Gregg Spiro later joined as Chief Financial Officer. (Id. ¶ 18.)

From 2018, Kraljevich, Petry and Spiro worked together for approximately one and a half years to build the Courser brand. (Id. ¶ 19.) Kraljevich was primarily responsible for the design, development and production of a pair of luxury sneakers to serve as Courser's initial product offering. (Id. ¶ 20.) In this role at Courser, Kraljevich alleges that he "authored numerous copyrightable images of shoes, including digital drawings of the top, bottom, and sides of shoes, and photographs of prototypes at various angles[.]"[1] (Id. ¶ 21.) In April 2020, Kraljevich registered two copyrights related to the Shoe Design: (1) registration number VAu001397981, and (2) registration number VAu001396841. Kraljevich alleges that he is the author of the Shoe Design and that the Petrys are not co-authors of the Shoe Design and did not provide any independently copyrightable contributions. (Id. ¶¶ 23-25.)

---

[1] These images of the shoe allegedly designed by Kraljevich for Courser are collectively referred to throughout as the "Shoe Design."

The Complaint alleges that at the time Kraljevich authored the Shoe Design, "he was not an employee of Courser" and "there was no signed work made for hire agreement with any of the Defendants." (Id. ¶¶ 30, 31.) Rather, "Mr. Petry and Mr. Spiro represented to Mr. Kraljevich that he was a shareholder in the COURSER brand and Mr. Kraljevich reasonably considered himself partners with Mr. Petry in co-founding the COURSER brand." (Id. ¶ 34.) Nevertheless, Kraljevich never received any share certificates in Courser, never received tax documents from Courser identifying him as a shareholder, never entered into a formal partnership or shareholder's agreement with respect to his affiliation with Courser, and never "received any financial renumeration from Defendants for his authoring of the Shoe Design." (Id. ¶¶ 35-36.)

In July 2019, Kraljevich requested that Courser identify him as an employee. (Id. ¶ 37.) On July 29, 2019, Kraljevich executed an employment agreement with Courser, with Spiro signing the employment agreement on behalf of the company (the "Employment Agreement", Doc 41, Ex. D). (Id. ¶ 39.) Among other things, the Employment Agreement stated that Kraljevich would receive an annual salary of $180,000, paid twice per month, and that all copyrightable works Kraljevich conceived as an employee of Courser would be considered "works made for hire." (Id. ¶ 40.) Kraljevich alleges that he conceived of the Shoe Design prior to entering into the Employment Agreement, and therefore the Shoe Design is not a work made for hire. (Id. ¶ 43.)

Kraljevich alleges that around November or December 2019, Spiro and the Petrys began excluding Kraljevich from Courser's corporate activities during the same time that Courser was in the early stages of launching the sneaker developed based on the Shoe Design. (Id. ¶¶ 45-48.) On July 8, 2020, Kraljevich sent the defendants a letter demanding that they

cease and desist from exploiting his intellectual property and that they pay him for work performed but for which he was not compensated.  (Id. ¶ 49.)  The parties attempted to mediate these issues in October 2020, but the dispute was not resolved.  (Id. ¶¶ 50-51.)  In December 2020, Kraljevich alleges that Courser began selling sneakers on its website that were based on the Shoe Design and therefore infringed upon Kraljevich's copyrights.  (Id. ¶¶ 52-59.)  On November 5, 2021, Kraljevich filed the Complaint in this action.

Kraljevich filed the Complaint against Courser Athletics, Inc., Michael Petry, Gregg Spiro and Laurie Petry.  Defendants Courser and Gregg Spiro advised the Court through counsel that a settlement in principle had been reached between Courser, Spiro and Kraljevich, and on February 4, 2022, the claims against Courser and Gregg Spiro were dismissed.[2]  (Docs 25 & 33.)  Thus, the instant action proceeds against the Petrys only.

Kraljevich asserts vicarious and contributory copyright claims against the Petrys (Counts II and III), as well as a breach of an implied contract relating to his employment (Count V).

DISCUSSION

Kraljevich moves for default judgment against the Petrys.  The Petrys, in turn, move to vacate the Certificates of Default and to dismiss the complaint for insufficient service of process, improper venue and failure to state a claim.

The Court declines to enter a default judgment and vacates the certificates of default.  It concludes that service of process was proper and, while venue is also proper, it will

---

[2] The February 4, 2022 Order of Dismissal (Doc 33) mistakenly dismissed the case as to all defendants, including the Petrys.  That Order of Dismissal was ultimately vacated (Doc 36), and a corrected Order of Dismissal as to only defendants Courser and Gregg Spiro was filed on February 28, 2022 (Doc 37).

enforce the forum selection clause that underlies the venue motion and transfer the action to the District of Massachusetts.  It is not necessary for the Court to address whether the Complaint fails to state a claim for relief.

I.      The Petrys' Rule 55(c) motion.

The Court will first address the Petrys' motion to vacate the Certificates of Default entered against them pursuant to Rule 55(c).  For the following reasons, the Petrys' Rule 55(c) motion is granted.

The Petrys were purportedly served with the summons and complaint on December 4, 2021 (Docs 21 & 22) and failed to timely appear to defend against Kraljevich's claims.  On February 3, 2022, Kraljevich moved for a Clerk's Certificate of Default against the Petrys, and the Clerk's Certificate of Default was entered that same day.  (Docs 30 & 32.)  On February 28, 2022, the initial pre-trial conference was held, and after the initial pre-trial conference attorneys filed notices of appearance on behalf of the Petrys.  (Docs 38 & 39.)  The Petrys moved to vacate the Clerk's Certificates of Default that had been entered against them and dismiss the Complaint.  (Doc 40.)  On March 1, 2022, the Court ordered Kraljevich to show cause why an order vacating the Certificates of Default should not be issued.  (Doc 42.)  On March 23, 2022, Kraljevich filed his motion for default judgment against the Petrys and a brief in opposition to the Petrys' motions to dismiss in response to the Order to Show Cause.  (Doc 45.)

Rule 55, Fed. R. Civ. P., provides a two-step process for obtaining a default judgment.  The first step, under Rule 55(a), permits the Clerk of Court to enter a default against a party that has failed to appear or defend.  Rule 55(b) then requires the non-defaulting party to apply to the court for entry of a default judgment.  In this case, Kraljevich has obtained a Clerk's

5

Certificate of Default and now moves for a default judgment.  The Petrys move to vacate the Clerk's Certificate of Default pursuant to Rule 55(c).

A decision on a motion for default judgment is left to the sound discretion of the court.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  Nevertheless, this discretion is "circumscribed," due to the "strong preference for resolving disputes on the merits" and the severity of the sanction of default judgment.  Id.; New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005).

On an opposed motion for default judgment, courts examine whether good cause exists to vacate the certificate of default.  Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981); Fed. R. Civ. P. 55(c).  To determine whether good cause exists to relieve a party from default, the Court analyzes three criteria: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party."  Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013).  Willfulness means conduct that is "egregious and . . . not satisfactorily explained" and requires a showing of more than "merely negligent or careless" conduct.  Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186 (2d Cir. 2015).  The moving party has the burden of showing an absence of prejudice, and "delay [in the litigation] alone is not a sufficient basis for establishing prejudice."  New York v. Green, 420 F.3d 99, 110 (2d Cir. 2005).  As to meritorious defenses, the movant must "present some evidence beyond conclusory denials to support his defense . . . . The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense."  Enron, 10 F.3d at 98.

6

The Court will grant the Petrys' motion to vacate the Certificates of Default. Although service delivered to the Petrys' New York Apartment was proper, the Petrys' default was not willful.  The Petrys have submitted the declaration of Michael Petry in which it is asserted that they did not receive the summons and complaint that were served at their New York Apartment.  He states that at the time of service, they had already moved to Florida with the purpose of enrolling their daughter in school in that state.  (Petry Dec'l ¶¶ 5-6.)  He concedes that they failed to provide a forwarding address to the Post Office or inform the Department of Motor Vehicles of their change of address, but states that this was because they were living in temporary housing accommodations at the time of service and were unsure as to when and where they would have a permanent address, rather than out of an attempt to avoid service.  (Id. ¶¶ 9-16.)  Further, after the Certificates of Default was entered against the Petrys on February 3, 2022 (Doc 32), the Petrys quickly moved to defend against the action on February 28, 2022, the same day that the initial pre-trial conference was held.  These circumstances indicate that the Petrys' default was not willful; at most, the Petrys were merely negligent in failing to appear before entry of the Certificates of Default.

The Petrys highlight several potentially meritorious defenses in their brief, some of which form the bases of their motions to dismiss.  Among those defenses are arguments that the copyrights were works for hire developed by Kraljevich on behalf of Courser (Doc 41 at 17-18) and that Michael Petry co-owns the asserted copyrights due to his contributions to the Shoe Design (id. at 18-19).  If proven at trial, these defenses would constitute complete defenses to Kraljevich's claims.

As to prejudice against Kraljevich, the Court concludes that Kraljevich would be minimal prejudiced, if at all, by vacating the Clerk's Certificate of Default.  There has been no

discovery taken in the case and permitting the Petrys to defend at this stage would not result in lost evidence or create new discovery difficulties.  Default judgment has not yet been entered, and the Petrys appeared to defend in the action by filing their motion to vacate the certificates of default before Kraljevich filed his motion for default judgment.  Although the action has been marginally delayed by the Petrys' tardy appearance, the Petrys have still appeared to defend while the action is in its earliest stages, and, in any case, a plaintiff must be prejudiced by more than "delay alone" to warrant denial of a defendant's motion to vacate the Certificate of Default. No such prejudice exists in this case.

For these reasons, the Petrys' Rule 55(c) motion is granted and the Clerk's Certificates of Default as to Michael Petry and Laurie Spiro are vacated.

II.     The Petrys' Motion Asserting Insufficiency of Service of Process.

The Petrys move to dismiss the action for insufficiency of service of process. Rule 12(b)(5), Fed. R. Civ. P.  The action was commenced on November 5, 2021 and on November 12, 2021, the Clerk of Court issued summonses for the Petrys.  (Docs 13 & 14.)  On November 24, 2021, notice of the lawsuit and a request to waive service was mailed via first-class mail through the United States Postal Service to the Petrys at their last known address:  1 York Street Apt. 10C, New York, New York, 10013-2159 (the "New York Apartment").  (Doc 46 ("Greenberger Dec'l") ¶ 6.)  Defense counsel represents that this mailing was never returned but the waiver of service was never received.  (Id.)  On December 4, 2021, a process server delivered to the New York Apartment copies of the summons and complaint and left those documents with the doorman of the apartment building, who refused access to the Petrys' unit but accepted the documents in accordance with his daily duties.  (Id. ¶ 7.)  On December 6, 2021, the process server mailed copies of the summons and complaint to the New York Apartment.

(Id. ¶ 8.)  The process server's affidavit notes that the method of service was "DMV Verified", meaning that the documents were delivered to the address on record for the Petrys at the New York Department of Motor Vehicles.  (Greenberger Dec'l, Ex. 2 at 1–2.)

The Petrys assert that they never received the summons or complaint.  (Doc 41-1 ("Petry Dec'l") ¶¶ 4–16.)  In a declaration, Michael Petry states under penalty of perjury that he and his wife moved out of the New York Apartment and began living in Florida starting on October 16, 2021.  (Petry Dec'l ¶ 5.)  He states that they moved to Florida in October 2021 so that their daughter could attend school there and that they had no intention of returning to New York.  (Id. ¶¶ 6–7.)  Upon moving to Florida in October 2021, the Petrys began living in temporary housing accommodations (the "Florida Airbnb").  The Petrys state that after leaving their New York Apartment "we did not leave a forwarding address with the Post Office, or with the management office of [their] New York residence, because [they] were in a hurry to leave New York due to the short notice [they] received about the start of the school year and because [they] were not certain where [they] would be able to find a suitable home in Miami[.]"  (Id. ¶ 14.)  The Petrys lived in the Florida Airbnb from October 16, 2021 until December 17, 2021, at which time they moved into a rental residence in Miami (the "Florida Rental").  (Id. ¶ 11.)

"On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient."  Deptula v. Rosen, 558 F.Supp.3d 73, 80 (S.D.N.Y. Sept. 3, 2021) (quoting Khan v. Khan, 360 F.App'x 202, 203 (2d Cir. 2010) (summary order)).

"In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons."  Id. (quoting DeLuca v. AccessIP Grp., Inc., 695 F.Supp.2d 54, 64 (S.D.N.Y. Feb. 9, 2010)).  "Rule 4(e) generally provides that individuals may be served by either (1) following the relevant state law procedures for service of the State

9

where the district court is located or where service is made, or (2) personal delivery, leaving a copy at the individual's dwelling or usual abode with a person who resides there, or delivering a copy to an agent authorized to receive process." Vidurek v. Koskinen, 789 F.App'x. 889, 893 (2d Cir. 2019) (summary order) (citing Fed. R. Civ. P. 4(e); Fed. R. Civ. P. 4(i)(3)).  Under New York Civil Practice Law and Rules section 308(2), service is permitted "by delivering the summons . . . to a person of suitable age and discretion at the . . . dwelling place or usual place of abode of the person to be served and by . . . mailing the summons to the person to be served at his or her last known residence . . . ."

 "[I]n a highly mobile and affluent society, it is unrealistic to interpret [Rule 4] so that the person to be served has only one dwelling house or usual place of abode at which process may be left." United States v. Mellon, 719 Fed.Appx. 74, 76 (2d Cir. 2018) (quoting Nat'l Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 257 (2d Cir. 1991)).  Indeed, such a "wooden reading of [Rule 4] would ignore its purpose: to insure that service is reasonably calculated to provide a defendant with actual notice of the action." Id. (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

 The Petrys argue that service of the summons and complaint upon the doorman at their New York Apartment and via certified mail to the same address was improper because they no longer lived at the New York Apartment on the date of service.  Rather, they were living in Florida at the time and intended to stay there indefinitely to allow their daughter to attend school in the state.  Kraljevich, on the other hand, contends that service on the doorman and by certified mail at the New York Apartment was proper because the New York Apartment continued to be their usual place of abode at the time of service, that is, when the Petrys were living in the Florida Airbnb.

The Petrys' argument that service was improper because the summons and complaint were delivered to their New York Apartment is unavailing.  Indeed, Michael Petry still maintained the New York Apartment as his address on his government issued ID, and there is no indication from the declarations submitted that the Petrys did not maintain a possessory interest in the New York Apartment at the time the summons and complaint were served at that address. Further, the Petrys implicitly recognize that they would still receive mail at the New York Apartment after they had left for Florida by acknowledging that they "did not leave a forwarding address with the Post Office, or with the management office of our New York residence[.]" (Petry Dec'l ¶ 14.)

The terms "dwelling house" and "usual place of abode" lack precise definition, though the Florida Airbnb where the Petrys were living at the time they were served at the New York Apartment could not reasonably be viewed as either their "dwelling house" or "usual place of abode."  The Petrys admit that the Florida Airbnb was merely a temporary housing accommodation.  (Petry Dec'l ¶ 9.)  The Florida Airbnb therefore lacked the requisite "indicia of permanence" that would have made it reasonable to serve the Petrys at that address.  The Petrys did not move into their permanent Florida Rental Apartment until December 17, 2021, (Petry Dec'l ¶ 11), while Kraljevich served the doorman at the New York Apartment on December 4, 2021 and sent the summons via certified mail to the New York Apartment on December 6, 2021 (Greenberger Dec'l ¶¶ 7-8).  Accordingly, the Petrys did not live in the Florida Rental Apartment until after the dates of service and attempted service at their New York Apartment.  Thus, the Court concludes that only the New York Apartment had sufficient "indicia of permanence" at the time of service of process to be deemed their dwelling or usual place of abode, and service upon

the doorman followed by certified mailing to the New York Apartment was reasonably calculated to provide notice to the Petrys.

The Court concludes that service was proper in this instance and Petrys' motion to dismiss the complaint under Rule 12(b)(5) is denied.

III.    The Petrys' Venue Motion.

The Petry also move to dismiss the complaint for improper venue pursuant to Rule 12(b)(3), Fed. R. Civ. P.  It relies principally on a forum selection clause in the Employment Agreement between Kraljevich and Courser that states:  "All disputes arising from or relating to this Agreement shall be brought in any court of competent subject matter jurisdiction in the Commonwealth of Massachusetts, and the parties consent to the jurisdiction of such courts over them for such purpose."  (Doc 41, Ex. D at 1.)

The Complaint alleges that "the infringing products are transported and sold" in this District and that Courser does business in the state of New York.  (Compl't ¶¶ 5, 7.)   On the face of the Complaint, venue is proper in this District.  See 28 U.S.C. § 1391 (venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

But the Court construes the Petrys' Rule 12(b)(3) motion as a motion pursuant to section 1404(a) of title 28 to transfer to the proper district and grants that motion and transfers it to the District of Massachusetts.  See, e.g. Licensed Prac. Nurses, Technicians & Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc., 131 F. Supp. 2d 393, 407 (S.D.N.Y. 2000) ("[T]ransfer pursuant to § 1404(a) may be an appropriate remedy for effectuating a forum-

selection clause even when the defendant does not seek that remedy, but argues for dismissal instead.")(Lynch, J.).[3]

An action brought in an "improper venue" is subject to dismissal.  Rule 12(b)(3), Fed. R. Civ. P.  The Rule "authorize[s] dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought."  Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas, 571 U.S. 49, 55 (2013). As noted, the allegations of the Complaint demonstrate that venue is not wrong or improper in this District.

But there is "a strong federal public policy supporting the enforcement of forum selection clauses." Martinez v. Bloomberg LP, 740 F.3d 211, 219 (2d Cir. 2014) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 6, 15 (1972)).  Enforceable forum selection clauses should therefore "be invalidated only when the resisting party satisfies the 'heavy burden' of showing that 'it would be unfair, unjust, or unreasonable to hold that party to his bargain.'" Id. at 218-19 (citing M/S Bremen, 407 U.S. at 17-18).

To determine whether a forum selection clause is enforceable, courts engage in a three-part inquiry:  (1) whether the clause was reasonably communicated to the party resisting enforcement, (2) whether the clause is mandatory or permissive, and (3) whether the claims and parties involved in the suit are subject to the forum selection clause.  See Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 721 (2d Cir. 2013).  If these three requirements are met then the forum-selection clause is presumptively enforceable, and the party resisting enforcement of the clause may rebut that presumption "by making a sufficiently strong showing that

---

[3] Kraljevich argues that the Petrys' motion is "procedurally defective" because it relies on Rule 12(b)(3) rather than the doctrine of *forum non conveniens*, and should therefore be denied.  Nevertheless, the Petrys' brief makes clear their intention to rely on the Employment Agreement's forum selection clause as grounds for dismissal of the Complaint.  Because the Petrys' motion is best decided on the merits of the applicability of the forum selection clause, the Court will construe the Petrys' motion as a motion to transfer pursuant to § 1404(a).

enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. (internal quotations and citations omitted).

The first and second prongs of the inquiry are easily addressed. The forum selection clause was incorporated in the Employment Agreement to which Kraljevich was a signatory. Kraljevich himself requested to execute an Employment Agreement with Courser, Kraljevich relies on the terms of the Employment Agreement in bringing the claims in Count IV, and Kraljevich makes no argument that the clause was not reasonably communicated to him. Indeed, there is no evidence to support that the forum selection clause was not reasonably communicated to Kraljevich.

Second, the forum-selection clause is mandatory. Indeed, the clause states that suits arising from the Employment Agreement "shall" be brought in Massachusetts. The word "shall" is routinely interpreted as creating a mandatory forum selection clause. See, e.g., Fasano v. Yu Yu, 921 F.3d 333, 336 (2d Cir. 2019); Raad v. Bank Audi S.A.L., No. 20-cv-11101, 2021 WL 4482285, at *3 (S.D.N.Y. Sept. 29, 2021).

As to the third prong—whether the claims and parties involved in the suit are subject to the forum selection clause—the Court considers both the subject matter of the claims and whether the Petrys are sufficiently closely related to the Employment Agreement's counterparties (i.e., Courser and Spiro) to permit them to enforce the forum clause. Kraljevich's claims, including the copyright claims against the Petrys in Counts II and III, "aris[e] from or relat[e] to" the subject matter of the Employment Agreement. The Employment Agreement specifies that any copyrights developed in whole or in part during the course of Kraljevich's employment at Courser will be deemed "works made for hire". (Doc 41, Ex. D at 2.) Kraljevich asserts that his authorship of the copyrights pre-dates the Employment Agreement and hence the

14

copyrights are not within the scope of the Employment Agreement.  The Petrys dispute this and take the position that the terms of the Employment Agreement put to rest any claim that Kraljevich's copyrights were anything but works for hire, as evidenced by Kraljevich not registering the copyrights until after he entered into the Employment Agreement.  (Doc 41 at 17-18.)  At this juncture, the Court cannot and does not make any ruling on the merits of the parties' respective positions.  But there is a sufficient basis to conclude that the dispute relates to the Employment Agreement.  See, e.g., Cfirstclass Corp. v. Silverjet PLC, 560 F.Supp.2d 324, 329 (S.D.N.Y. June 11, 2008) ("[C]ourts, including this one, have held that a contractually-based forum selection clause will also encompass tort claims . . . if resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract."); Production Resource Group, L.L.C. v. Martin Professional, A/S, 907 F.Supp.2d 401, 414-415 (S.D.N.Y. Sept. 27, 2012) (collecting cases); see also Diesel Props S.r.L. v. Greystone Business Credit II LLC, No. 07-cv-9580 (HB), 2008 WL 4833001, at *8 (S.D.N.Y. Nov. 5, 2008) (noting that the meaning of "related to" is "extremely broad.")   In addition, Kraljevich makes a claim for implied breach of contract against the Petrys for unpaid compensation in connection with work performed for Courser.  (Compl't ¶¶ 97-100.) Kraljevich's claim for unpaid compensation relates to and arises from his employment with Courser, and the Employment Agreement sets forth the terms for Kraljevich's compensation. Therefore, again, Kraljevich's claims in Count V relate to the terms set forth in the Employment Agreement.

        The Court concludes based upon Kraljevich's own allegations that the Petrys are sufficiently "closely related" to Courser to permit their enforcement of the forum selection clause against Kraljevich.  "The fact a party is a non-signatory to an agreement is insufficient, standing

alone, to preclude enforcement of a forum selection clause." Magi XXI, Inc., 714 F.3d at 722

(citing Aguas Lenders Recovery Grp., LLC v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009))

(internal quotations omitted).  Indeed, "a non-signatory to a contract containing a forum selection

clause may enforce the forum selection clause against a signatory when the non-signatory is

'closely related' to another signatory."  Id. at 723.  A non-signatory is considered "closely

related" to another signatory where "the relationship between the non-signatory and that (latter)

signatory [is] sufficiently close that the non-signatory's enforcement of the forum selection

clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the

forum selection clause."  Id.

   Paragraph 80 of the Complaint makes clear the relationship between the Petrys,

Spiro and Courser:  "Courser is a closely-held corporation that is owned, operated, and

controlled by the Individual Defendants [i.e., Michael Petry, Gregg Spiro and Laurie Spiro], who

are officers of Courser and are (or in the case of Laurie, claim to be) co-founders of the

COURSER brand."  Indeed, Kraljevich alleges that he and Michael Petry founded and launched

Courser together.  (Compl't ¶¶ 15-17.)  He alleges that Michael Petry was the CEO and Gregg

Spiro the CFO of Courser.  (Id. ¶ 18.)  He alleges that "[f]or approximately one and a half years,

Mr. Kraljevich, Mr. Petry and Mr. Spiro worked together to build the new COURSER brand."

(Id. ¶ 19.)  And he claims that he "considered himself partners with Mr. Petry in co-founding the

COURSER brand."  (Id. ¶ 34.)  Thus, Kraljevich's allegations make clear that the Petrys were

intimately involved with the founding, development, launch and operation of Courser, and that

they did so hand-in-hand with Gregg Spiro.  Accordingly, it was foreseeable to Kraljevich that

the Petrys, though not signatories to the Employment Agreement, are sufficiently closely related

to Courser and Spiro that they may seek to enforce the Employment Agreement's forum selection clause in any dispute in connection with Kraljevich's work at Courser.

Kraljevich fails to overcome the presumptive enforceability of the forum selection clause.  In his brief, Kraljevich asserts only that Massachusetts would not be a convenient forum because the Petrys maintain apartments in New York and Miami.  (See Doc 49 at 17-18.)  In a conclusive manner, he states that "[e]nforcement of the forum selection clause would be unreasonable and unjust" without further explanation.  (Id. at 19.)  On the contrary, litigation of this case in a Massachusetts court would not result in any unreasonable or unjust burden to be borne by Kraljevich.  There is no indication that access to evidence or witnesses would be hindered by litigating the case in Massachusetts rather than New York.  And litigating in Massachusetts would better conform to the parties' expectations when the Employment Agreement was executed and designated Massachusetts courts as the proper fora for resolution of disputes arising under the Agreement.

Finally, the Petrys have no say in whether Kraljevich selects a state or federal forum.  Kraljevich already selected a federal forum and asserted federal copyright claims against the Petrys.  These copyright claims may only be asserted in federal court and not in state court. 28 U.S.C. § 1338(a).

For these reasons, the Petrys' motion will be construed as a motion to transfer the action to the District of Massachusetts and as such it will be granted.

CONCLUSION

The Court has considered all of the arguments of the parties, including those not explicitly addressed herein.  The Petrys' motion to vacate the Clerk's Certificates of Default

under Rule 55(c) is GRANTED and Kraljevich's motion for an entry of default judgment is DENIED.  The Petrys' motion to dismiss under Rule 12(b)(5) for insufficient service of process is DENIED.  The Petrys' motion to dismiss under Rule 12(b)(3) is DENIED as such but construed as a motion pursuant to section 1404(a) to transfer to the District of Massachusetts and as such it is GRANTED.  The Court need not reach Petrys' Rule 12(b)(6) motion to dismiss the Complaint for failure to state a claim.

The Clerk is respectfully directed to transfer the action to the United States District Court for the District of Massachusetts and terminate the motion (Doc 45).


SO ORDERED.


P. Kevin Castel
United States District Judge


Dated:  New York, New York
        August 23, 2022

18